J. S07043/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                        : PENNSYLVANIA
                     v.                 :
                                        :
THOMAS A. GOODEN,                       :         No. 232 EDA 2017
                                        :
              Appellant                 :


Appeal from the Judgment of Sentence, August 25, 2016,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0002482-2015


BEFORE:  BENDER, P.J.E., PANELLA, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 16, 2018**

Appellant, Thomas Gooden, appeals from the August 25, 2016 judgment of sentence entered by the Court of Common Pleas of Philadelphia County following his conviction of homicide by vehicle, accidents involving death or personal injury, accidents involving death or serious injury—not properly licensed, involuntary manslaughter, three counts of aggravated assault by vehicle, and four counts of recklessly endangering another person.  After careful review, we affirm.

The trial court provided the following factual and procedural history:

> On July 13, 2013, at about 2:43 a.m., [appellant] was driving his automobile on Lincoln Drive near Morris Street in Philadelphia.  At a curve in the roadway, [appellant] lost control of his vehicle (a Subaru), which crossed into the opposite bound lane and collided with a vehicle (a Nissan) driven by Angela Terry.  As a result of the collision,

[appellant's] passenger, Ashley Gant Madison, was killed and another passenger, Bria Staley, was injured. Angela Terry and her passenger, Harvey Stratton, were injured. A third vehicle, (a Honda) was involved in the accident, but [appellant] was not charged with offenses relating to the third vehicle.

A jury convicted [appellant] of accident involving death or personal injury, accident involving death— not properly licensed, homicide by vehicle, involuntary manslaughter, three counts of aggravated assault by vehicle, and four counts of recklessly endangering another person. [Appellant] received an aggregate sentence of eight to 16 years[' imprisonment.]

Trial court opinion, 6/2/17 at 1-2 (citations omitted). Appellant filed a timely notice of appeal to this court. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and appellant timely complied. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issue for our review:

Did the lower court err in denying [appellant's] **Frye**[1] motion pursuant to Pa.R.E. 702 where no scientific basis existed for the assumptions underlying the calculation of [appellant's] speed by the Commonwealth's accident reconstruction expert?

Appellant's brief at 3.

Appellant specifically avers that the Commonwealth's accident reconstruction expert, Philadelphia Police Officer William Lackman

---

[1] **Frye v. United States**, 293 F. 1013 (D.C. Cir. 1923).

("Officer Lackman"), "employed no methodology at all" when he reached the "assumption that [appellant], '[drove] the curve as he was supposed to have been [sic] in the curve.'" (Appellant's brief at 11.) Appellant further contends that the manner in which Officer Lackman reached his conclusion is "deeply flawed and simply cannot meet the *Frye* standard." (*Id.*) Put another way, at the *Frye* hearing, appellant's counsel contended that "the methodology that [appellant] exceeded that critical speed as the cause of the accident and then also the methodology used to exclude other possible causes [are] not scientifically accepted." (Notes of testimony, 12/21/15 at 3-4.)

When reviewing a trial court's admission of expert testimony under the *Frye* standard,[2] we are held to the following:

> as to the standard of appellate review that applies to the *Frye* issue, [our supreme court] has stated that the admission of expert scientific testimony is an evidentiary matter for the trial court's discretion and should not be disturbed on appeal unless the trial

---

[2] The *Frye* standard is as follows:

> Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.

*Frye*, 293 F. at 1014.

court abuses its discretion. ***See Commonwealth v. Zook***, 615 A.2d 1, 11 (Pa. 1992), ***cert. denied***, 507 U.S. 974 (1993). An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous. ***Paden v. Baker Concrete Constr., Inc.***, 658 A.2d 341, 343 (Pa. 1995).

***Grady v. Frito-Lay, Inc.***, 839 A.2d 1038, 1046 (Pa. 2003). The ***Grady*** court re-affirmed Pennsylvania's adoption of the ***Frye*** standard, as it applies only to an expert's methodology. ***Id.*** at 1047.

With respect to application of the ***Frye*** standard, our [supreme court] has "made it clear that ***Frye*** is not implicated every time science comes into the courtroom; rather, it applies only to proffered expert testimony involving novel science." ***Commonwealth v. Dengler***, 890 A.2d 372, 382 (Pa. 2005); ***see also Grady***, 839 A.2d at 1045 (finding ***Frye*** is applicable to novel science, as well as where scientific methods are utilized in [a] novel way). Our [supreme court] has noted that a "reasonably broad meaning should be ascribed to the term 'novel,'" and "a ***Frye*** hearing is warranted when a trial judge has articulable grounds to believe that an expert witness has not applied accepted scientific methodology in a conventional fashion in reaching his or her conclusions." ***Betz v. Pneumo Abex LLC, et al.***, 44 A.3d 27, 53 (Pa. 2012). Further, what constitutes novel scientific evidence is usually decided on a case-by-case basis as there is some flexibility in the construction, as "science deemed novel at the outset may lose its novelty and become generally accepted in the scientific community at a later date, or the strength of the proponent's proffer may affect the ***Frye*** determination." ***Dengler***, 890 A.2d at 382. As [our supreme court] noted in ***Dengler***:

> Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.

*Id.* at 380-381 (quoting *Frye*) (citation omitted).

*Commonwealth v. Walker*, 92 A.3d 766, 790 (Pa. 2014).

As noted by the trial court, Officer Lackman based his opinion on the following:

1. Position of stopped vehicles;
2. Damage to the asphalt in the roadway;
3. Interview with [appellant];
4. Interview with police officers on the scene;
5. Observing damage to the vehicles;
6. Photographing the vehicles;
7. Calculating the impact;
8. Calculating the point of maximum engagement;
9. The location of scattered automobile parts;
10. Calculating the trajectory of the vehicles;
11. Mathematical formulation to calculate the critical speed of the curve; and
12. Obtaining the coefficient of friction.

Trial court opinion, 6/2/17 at 4 (citations omitted). Based upon our review of the record, we agree with the trial court's conclusion that it was "immaterial" whether appellant's speed exceeded 75 miles per hour when he attempted to negotiate the curve on Lincoln Street; rather, the critical fact

was that appellant "was driving twice the speed limit on a wet night on a curved roadway." (*Id.* at 9.) Indeed, appellant's own expert, James Halikman, testified that appellant was traveling over 50 miles per hour—twice the posted speed limit of 25 miles per hour. (Notes of testimony, 12/21/15 at 112.)

We therefore find that the trial court did not abuse its discretion when it admitted Officer Lackman's expert testimony.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/18